IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KELLY HAFIZ,                                  :
                                             :
         *Plaintiff*,                          :
                                             :
    v.                                       :    **Case No.: 2:23-cv-3064**
                                             :
MERAKEY, INC. d/b/a MERAKEY                   :
PERSONAL CARE HOME *and*                      :    **COMPLAINT IN CIVIL ACTION**
MAXIMILIAN ZURAT, *jointly and*              :
*severally*,                                  :
                                             :
         *Defendants*.                         :

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Kelly Hafiz, by and through the undersigned counsel, J.P. Ward & Associates, LLC, and, specifically, Joshua P. Ward, Esquire, who files the within Complaint against Defendants, Merakey, Inc. d/b/a Merakey Personal Care Home and Maximilian Zurat, jointly and severally, of which the following is a statement:

## PARTIES

1.      Plaintiff, Kelly Hafiz (hereinafter, "Ms. Hafiz"), is an adult individual who currently resides at 102 Village Square Drive, Sherman Dale, PA 17090.

2.      Defendant, Merakey, Inc. d/b/a Merakey Personal Care Home (hereinafter, "Merakey" or "Defendant"), is a corporation with a place of business located at 1071 Page Road, Harrisburg, PA 17111.

3.      Defendant, Maximilian Zurat (hereinafter "Mr. Zurat"), is a Director of Merakey and direct participant in the statutory torts set forth herein.

1

**JURISDICTION AND VENUE**

4.      Jurisdiction is proper as Ms. Hafiz brings this Complaint under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. (hereinafter, the "ADA"), and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 (hereinafter, the "PHRA").

5.      Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Dauphin County, and therefore, this action is within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania and venue is proper pursuant to 28 U.S.C. § 1391(b).

**FACTUAL ALLEGATIONS**

6.      On January 10, 2022, Ms. Hafiz initiated her employment with Merakey in the capacity of a Psychiatric Technician.

7.      Ms. Hafiz meets the criteria for disability as outlined in the Americans with Disabilities Act due to her diagnosis of depression and anxiety, a condition she has been contending with for over 8 years.

8.      Additionally, Ms. Hafiz grapples with a panic disorder and endures panic attacks stemming from her anxiety.

9.      In the initial stages of her association with Merakey, Ms. Hafiz revealed her disability status through the completion of her new hire documentation.

a. **During her employment with Merakey, Ms. Hafiz was subjected to harassment, discrimination, hostile work environment, and retaliation/termination following her <u>reports of discrimination.</u>**

10. In or around June of 2022, Ms. Hafiz's Assistant Director, Adelaide "Addie" Fuhrman (hereinafter "Ms. Fuhrman"), was on leave following the passing of her husband.

11. While Ms. Fuhrman was on leave, Ms. Hafiz handled some of her responsibilities, including but not limited to, creating a weekly menu and ordering groceries for the home.

12. Ms. Hafiz's handling of these duties initiated a pattern and practice of bullying, abuse and harassment from her coworker Patsy Branche (hereinafter "Ms. Branche").

13. Ms. Branche came into the office and began screaming at Ms. Hafiz because she believed the grocery orders were too large, stating "If the boss were here she would pull you aside, you are spending too much!"

14. Ms. Hafiz responded, "If management thought so then they would have told me." Ms. Branche screamed back at her "I'm telling you now!"

15. When Ms. Hafiz turned to walk away, Ms. Branche became further enraged, to which Ms. Hafiz responded, "I'm walking away from a situation. I can't be involved in a yelling match. I can't handle people screaming at me, I have anxiety," in reference to her panic disorder.

16. Following the above incident, Ms. Branche continued to regularly bully and attack Ms. Hafiz.

17. The Nursing Supervisor, Brenda Golob (hereinafter "Ms. Golob"), witnessed Ms. Branche yell at Ms. Hafiz numerous times.

18. Ms. Hafiz wrote to Human Resources, and her union, to address Ms. Branche's behavior towards her.

19. Defendant offered to host a "mediation" which was an informal meeting with management, the subject employee, and union representation.

3

20.    On August 18, 2022, Director, Max Zurat (hereinafter "Mr. Zurat") left Ms. Hafiz a voicemail which stated that he promised he would stop the bullying by Ms. Branche and it would never happen again.  Ms. Hafiz still has Mr. Zurat's voicemail on her phone and it can be produced upon request.  This call and voicemail occurred in advance of the "mediation".

21.    Unfortunately, Mr. Zurat did not keep this promise to take action and stop the bullying.

22.    On September 16, 2022, Ms. Hafiz brought in some food and drink items from home with her initials on them and put them in the fridge in the back staff area.

23.    While Ms. Hafiz was on the phone with Ms. Golob, Ms. Branche entered the room and started to take one of Ms. Hafiz's drinks with her initials on it.

24.    When Ms. Hafiz told Ms. Branche that the drink belonged to her, Ms. Branche became enraged and began yelling at Ms. Hafiz and asking angrily which items in the fridge belonged to Ms. Hafiz.

25.    Ms. Hafiz explained the items with her initials belonged to her, to which Ms. Branche yelled in response, "Everything isn't yours, I'm taking it anyway and [Ms. Fuhrman] said we are allowed to have anything that's back her."

26.    Ms. Branche's outburst triggered Ms. Hafiz's disability and she began shaking and crying.

27.    Ms. Golob overheard Ms. Branche yelling over the phone and suggested that Ms. Hafiz contact Ms. Fuhrman to notify her of what happened.

28.    Indeed, Ms. Hafiz called Ms. Fuhrman that day and sent a follow-up email in summary of the call to Ms. Fuhrman copying Mr. Zurat. *See* Exhibit A.

4

29.     Ms. Hafiz stated in her email, in part, "This is the 3rd time that Patsy has been unable to have a conversation and resorted to screaming and yelling at me.  When I spoke with you last week, I let you know the stress this is causing me and creating a hostile work environment for me.  When I see her car in the lot as I'm coming in, I get a headache and become physically ill.  I feel like she is volatile, and her temper/mood is unpredictable.  Going forward if it is feasible with other staff I will come in after she has left for the day. I have headaches, nausea and have been having stomach issues since these situations have occurred with Patsy.  I have trouble eating, sleeping when I know she's going to be here the next day when I arrive."

30.     Upon information and belief, Ms. Branche would come in to work on days she was not scheduled and stay at work past her shift hours in order to intimidate and harass Ms. Hafiz.

31.     Merakey was aware of this pattern of conduct by Ms. Branche, as evidenced by text messages between Ms. Hafiz and Merakey management and human resources. *See* Exhibit B.

32.     On September 20, 2022, Ms. Hafiz texted Ms. Fuhrman and Mr. Zurat stating that she was having a panic attack in the back staff area due to Ms. Branche staying after her shift and waiting for Ms. Hafiz to arrive. *Id.*

33.     On October 7, 2022, Ms. Hafiz texted Ms. Fuhrman and stated that Ms. Branche told Mr. Zurat she would be coming to work the next day, despite not being scheduled, and that Ms. Hafiz would not be in early since that was the case. *Id.*

34.     Ms. Hafiz also stated that Ms. Branche purposely left dishes in the sink and did not take out the trash as a way to harass and antagonize Ms. Hafiz. Ms. Hafiz stayed in the back staff area and cried until Ms. Branche left due to a panic attack triggered by Ms. Branche's conduct. *Id.*

35.     Ms. Hafiz complained to Ms. Fuhrman that Ms. Branche had not been disciplined and no corrective action was taken, despite her numerous complaints and the effect Ms. Branche's conduct had on Ms. Hafiz's disability.

36.     On October 12, 2022, Ms. Hafiz texted Ms. Fuhrman to notify her that she was waiting in her car in the parking lot for Ms. Branche to leave before entering the building. Ms. Fuhrman responded, "Okay thanks".

37.     On October 18, 2022, Ms. Hafiz forwarded the above referenced email (Exhibit A) to Merakey People Operations Manager, Thad Stultz ("Mr. Stultz").

38.     On October 19, 2022, Mr. Stultz responded with the following email:

> Kelly,
>
> Thank you for the information. I was informed that there is a mediation meeting scheduled today for you and Patsy. That would have been my first recommended step to try and resolve the issue. I have asked that the manager's take notes and provide them to me to include with the file. If you would, could you send us a follow up email as to how the meeting went and where you landed? I would like to compare your thoughts with the manager's notes to make sure everyone is on the same page. Can we start there?
>
> Thanks, Thad

*See* Exhibit A.

39.     Ms. Hafiz was returning to work from vacation that day. She was caught off guard by the "mediation" between Merakey and Ms. Hafiz (without union representation).

40.     Ms. Hafiz emailed Mr. Stultz the following response:

> Hi Thad. This is the first I've heard of a mediation meeting. I'm not exactly sure how it's going to go considering I can't be around her without having a panic attack. Just reading your email saying that I

6

> have to be in a room with her I'm having anxiety right now my palms are sweating and I'm about to start crying and I just don't know that this is a solution.

*Id.*

41. Thus, Merakey did not inform the union prior to the mediation and there was no HR representative present, only Mr. Zurat, his superior, Mary Lenhart (hereinafter "Ms. Lenhart"), Ms. Hafiz and Ms. Branche.

42. In the mediation, Ms. Lenhart admitted to Ms. Hafiz that Merakey had "let her down" and was "not paying attention to her complaint."

43. Throughout the meeting, Ms. Branche was smirking and laughing, apparently, at the description of events and Ms. Hafiz's disability.

44. Ms. Branche was permitted to mock Ms. Hafiz in the meeting. Ms. Hafiz felt so embarrassed that she had to physically leave the meeting.

45. Ms. Lenhart and Mr. Zurat followed her for a private conversation in which Ms. Hafiz became tearful and stated, "Everyone was right, people told me when I started that [Merakey] does not care about its employees."

46. Ms. Hafiz went on to state, "The only reason you pretended to do something [to address her complaints] was because I called HR and they made you do something. This is harassment."

47. Ms. Lenhart and Mr. Zurat told Ms. Hafiz, "We need to just move forward and consider this water under the bridge."

48. Ms. Hafiz stated that her "depression and anxiety and panic does not work this way, this is making it worse. . . the mediation made things worse."

49. On October 20, 2023, Ms. Hafiz sent Mr. Stultz the following email in summary of the "mediation":

> Good morning Thad.
>
> I participated in the mediation yesterday and was extremely disappointed in my management once again. Patsy lied, played innocent like she didn't know what she was doing. Was not confronted or addressed about her behavior and was allowed to smirk, snicker and even laugh when I expressed how it affected me and no one addressed her about it. I was visibly upset, shaking and crying telling her how her inappropriate behavior has affected me and she laughed. After 45 minutes of her not owning anything and trying to deflect it back on me about things that were completely irrelevant and not why we were there, she laughed at me again and I got up, told her "I'm so glad that she finds it funny how she's caused me so much mental pain" and walked out.

*Id.*

50. Ms. Hafiz followed up with the following:

> After speaking with a counselor this morning through EAP I will be writing out a formal statement about my experience yesterday and will be submitting a formal statement to you to keep on record. Moving forward I will be keeping a journal for anything situations / incidents that occur.
>
> Thank you for your attention to this matter.

*Id.*

51. Mr. Stultz responded:

> Kelly,
>
> Thank you for participating. I'm sorry it did not live up to expectations. Certainly follow the EAP's advice and if issues come up, please bring them to your supervisors attention. A word of advice, cc Mary Lenhart with those issues as well so she can see they are being handled. You can certainly cc myself as well. If you need anything further please let us know.

*Id.*

52.     Evidently, after Ms. Hafiz's numerous reports of the incidents with Ms. Branche, Merakey failed to take corrective action against Ms. Branche or accommodate Ms. Hafiz in any way.

53.     Following the mediation, Ms. Branche's harassment of Ms. Hafiz became more severe and frequent.

54.     Ms. Branche would slam things around Ms. Hafiz and stand in doorways blocking her path in an effort to intimidate her.

55.     Ms. Hafiz would have to ask her several times before she would move out of her way.

56.     Merakey eventually began scheduling Ms. Hafiz and Ms. Brand on opposing shifts to minimize contact. However, Ms. Hafiz would harass and bully her every time the two crossed paths.

57.     On December 18, 2022, Ms. Hafiz sent Mr. Zurat a text message informing him that she was going to begin searching for new employment due to the continued harassment from coworkers. *See* Exhibit C.

58.     In the text message, Ms. Hafiz stated the following:

> Hi [M]ax. I hope you are having a nice weekend or at least attempting to.
>
> I just wanted to let you know I am going to start looking for another job and respond to the recruiters who have been reaching out to me.
>
> I can't take the continued harassment from my co workers, [P]atsy still is bullying and harassing just not verbally anymore… now it's just standing in the way where I'm walking or slamming things

> around to be intimidating. Gary leaving rude comments to me in the comm[unications] log for everyone to see is completely inappropriate and intentionally overstocking things because something was said about night shift stocking not getting done is just petty and rude. I've sat in the office today crying off and on because I've had just about all I can take.

*Id.*

59.     Mr. Zurat did not respond.

**b.  <u>Merakey's retaliation and wrongful termination of Ms. Hafiz.</u>**

60.     In or around early January 2023, Merakey retaliated against Ms. Hafiz for her complaints and notice of her job search by initiating an unfounded and investigation based on a bogus complaint.

61.     On January 9, 2023, Ms. Hafiz was on vacation when she received a call from Mr. Zurat stating that the "Outside Quality and Compliance Office" (hereinafter, "QCO")[1] received a "complaint" about her.  Mr. Zurat was vague in his description of the complaint and stated that Merakey would be reaching out to her in the next day or so. Ms. Hafiz was never contacted.

62.     Ms. Hafiz was an upstanding employee and any complaint made against her could only have been in retaliation for her protected activity (complaints) against Ms. Branche and Merakey.

63.     On January 19, 2023, Ms. Hafiz's counsel sent Merakey a Letter of Representation, Preservation Demand, Draft Charge of Discrimination and Settlement Demand Letter.

64.     On January 25, 2023, Merakey's General Counsel responded to Ms. Hafiz's counsel's communications, however, only to say that she would be handling the matter and to forward all communications regarding the matter to Merakey's counsel.

---

[1] Plaintiff does not know what office or organization Mr. Zurat was referring to.   Plaintiff assumed that it was a third party administrator that handled HR matters.

65.     Unbeknownst to counsel for Plaintiff, Merakey continued to communicate directly with Ms. Hafiz throughout its investigation of the complaint.

66.     On January 31, 2023, Ms. Hafiz was interviewed by Jenelle Arnold (hereinafter "Ms. Arnold") from QCO in the presence of union representative Elaine Barber (hereinafter "Ms. Barber").

67.     On February 1, 2023, Ms. Arnold conducted a follow up interview with Ms. Hafiz.

68.     On February 3, 2023, Ms. Hafiz and Ms. Barber had a Zoom meeting with Ms. Arnold and Lori Schwartz (hereinafter "Ms. Schwartz") from QCO to verbally review the interview notes and give Ms. Hafiz the opportunity to make corrections.

69.     Ms. Hafiz verbally dictated many corrections to her statement and interview notes to Ms. Arnold, however, Ms. Arnold refused to make the changes.  Ms. Arnold refused to memorialize any language which would have detailed the disability discrimination, harassment, or retaliation.

70.     On February 17, 2023, Merakey People Operations Partner Kimberly Equi (hereinafter "Ms. Equi") informed Ms. Hafiz that QCO did not receive her attestation of the interview notes.

71.     Ms. Hafiz stated that she would not sign QCO's recorded statement unless and until they made the necessary corrections.

72.     On February 20, 2023, Ms. Hafiz participated in a phone call with Ms. Equi and Ms. Arnold for the purpose of making edits to Ms. Hafiz's statement.

73.     On February 21, 2023, Ms. Equi stated that she would provide Ms. Hafiz with an email summary of the updates and corrections to the statement based on their phone call. However, Ms. Hafiz never received any email or corrected statement.

74.     On February 22, 2023, Ms. Hafiz took it upon herself to send Ms. Equi written corrections to her statement. Ms. Equi responded that she would forward the corrections to QCO to update the interview notes and then send the notes back to Ms. Hafiz when they were corrected. No corrected statement or updated notes were ever provided to Ms. Hafiz.

75.     On February 27, 2023, Ms. Hafiz was terminated from her position via a letter signed by Mr. Zurat. (A true and correct copy is attached as Exhibit D).   Ms. Hafiz was not given a specific factual basis for her termination.  Mr. Zurat claimed that she was terminated for "founded violations of Merakey's Standards of Professional Behavior Policy."

76.     Ms. Hafiz intends to prove that her termination was pretextual and in retaliation for her reports of disability discrimination, hostile work environment, and reports of retaliation.

## PARTICIPATION THEORY
### *Pled in connection with all Counts*

77.     The courts of this Commonwealth recognize the "participation theory," whereby, a corporate officer or representative who participates in wrongful, injury-producing conduct can be personally and individually liable while acting within the scope of their duty to the corporation. See Loeffler v. McShane, 539 A.2d 876 (Pa. Super. Ct. 1988); Moy v. Schreiber Deed Sec. Co., 535 A.2d 1168 (Pa. Super. Ct. 1988); Amabile v. Auto Kleen Car Wash, 376 A.2d 247 (Pa. Super. Ct. 1977).

78.     "Under the participation theory, the court imposes liability on the individual as an actor rather than as an owner. Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer." Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 90 (Pa. 1983). Liability will attach where the record establishes the corporate officer's participation in the tortious activity. Id. "Thus, in order for liability to attach the officer must

actually participate in wrongful acts." Kaites v. Commonwealth, Dep't of Envtl. Res., 529 A.2d 1148, 1151 (Pa. Commw. Ct. 1987).

79.     Further, the fact that a corporation may be vicariously or secondarily liable under the doctrine of respondeat superior does not relieve the individual of their responsibility. Donsco, Inc. v. Casper Corp., 587 F.2d 602, 606 (3d Cir. 1978) (citing Zubik v. Zubik, 384 F.2d 267, 275 (3d Cir. 1967)). "Such an action may exist even though the agent or officer derived no personal benefit, but acted on behalf, and in the name of, the corporation and the corporation alone was enriched by the act." Shonberger v. Oswell, 530 A.2d 112, 114 (Pa. Super. Ct. 1987) (citing McDonald v. First Nat'l Bank, 44 A.2d 265, 266 (Pa. 1945)).

80.     Mr. Zurat was aware of Ms. Hafiz's disability and many requests for accommodation.

81.     Admittedly, Mr. Zurat failed to take corrective action in response to any of Ms. Hafiz's many complaints.

82.     Ultimately, Mr. Zurat made the decision in his role as Director to terminate Ms. Hafiz's employment in retaliation for her protected activity.

83.     Mr. Zurat was a Director of Merakey and acted within his capacity as an officer of the company in the commission of this intentional tort.  Thus, he may properly be held personally liable, jointly and severally.

### COUNT I
### DISCRIMINATION IN VIOLATION OF THE ADA AND THE PHRA
*Plaintiff v. Defendants Merakey and Mr. Zurat*

84.     Ms. Hafiz incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

13

85.     The inquiry into whether a person is disabled under the ADA is made on a case-by case analysis. *Tice v. Centre Area Transport Authority*, 247 F.3d 506 (3rd Cir. 2001). To establish a *prima facie* case of discrimination under the ADA, Plaintiff must show: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of his job, with or without reasonable accommodations by the employer; and (3) she suffered an otherwise adverse employment decision as a result of discrimination. See *McGlone v. Philadelphia Gas Works*, 17-1399, 2018 WL 2193658, at *2 (3d Cir. May 14, 2018) (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998).

86.     The PHRA is modeled similarly to the ADA and shares similar burdens. The analytical framework used to evaluate a disability discrimination claim under the PHRA is effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds. *Bialko v. Quaker Oats Co.*, 434 F. App'x. 139, 142 n.5 (3rd Cir. 2011) (citing *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) (noting that the PHRA, in all "relevant respects," was "basically the same as the ADA" and was interpreted "in accord" with the ADA and related case law, thus meaning that "disposition of [plaintiff's] ADA claim applie[d] with equal force to his PHRA claim.")).

87.     Under the ADA, an individual has a disability if she: (1) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. *Thomas v. Trs. Of the Univ. of Pa.,* 2020 U.S. Dist. LEXIS 11056 *9 (E.D. Pa. 2020) (quoting *Lackey v. Heart of Lancaster Reg'l Med. Ctr.,* 704 F. App'x 41, 48 (3d Cir. 2017)).

88.     Under the ADA, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting,

bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Berkowitz v. Oppenheimer Precision Prods.,* 2014 U.S. Dist. LEXIS 152533 at *8-9 (E.D. Pa. Oct. 28, 2014).

89. Ms. Hafiz was disabled and/or regarded as disabled within the meaning of the ADA and the PHRA.

90. Merakey was made aware of Ms. Hafiz's disability when she was hired and regarded her as disabled.

91. Ms. Hafiz was highly qualified to perform the necessary functions of her position.

92. Despite Merakey's knowledge of Ms. Hafiz's disability and her repeated complaints, she was continuously subjected to extreme and abusive behavior by her coworkers due to Merakey's failure to take corrective action.

93. Ms. Hafiz suffered other adverse employment actions on the basis of her disability such as a surprise "mediation" in which her tormenter laughed at her while she cried for the entirety of the meeting, a bogus suspension and investigation and ultimately, termination.

94. Defendants' actions were intentional, wanton, and willful, such that punitive damages are warranted.

95. As a direct and proximate result of the aforementioned conduct, Ms. Hafiz suffered actual damages, including but not limited to, lost wages, emotional distress, anxiety, harm of reputation, humiliation, and severe inconvenience all in the past, present, and future.

WHEREFORE, Plaintiff, Ms. Hafiz, hereby requests that this Honorable Court enter judgment in her favor and against the Defendants, including back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorney's fees, in addition to such other relief as deemed just and proper.

## COUNT II
### FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA AND THE PHRA
### *Plaintiff v. Defendants Merakey and Mr. Zurat*

96.     Ms. Hafiz incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

97.     To prevail on a claim of failure to accommodate, a plaintiff must establish that "(1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Tourtellotte v. Eli Lily & Co.*, 636 F.App'x 831, 849 (3d Cir. 2016) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319-20 (3d Cir. 1999)).

98.     At all times relevant hereto, Defendants were aware of Ms. Hafiz's disability.

99.     Ms. Hafiz requested reasonable accommodation in the form of being separated from Ms. Branche.

100.    Ms. Branche's abusive conduct toward Ms. Hafiz triggered her disability such that Ms. Hafiz would regularly suffer panic attacks at work.

101.    Defendants failed to make a good faith effort in reasonably accommodating Plaintiff's disability.

102.    Plaintiff could have been reasonably accommodated but for Defendants' lack of good faith.

103.    The failure to accommodate and adverse employment actions were directly related to Ms. Hafiz's disability.

16

104.    The actions of Defendants were intentional, wanton, and willful, such that punitive damages are warranted.

105.    As a direct and proximate result of the aforementioned conduct, Ms. Hafiz suffered actual damages, including but not limited to, lost wages, emotional distress, anxiety, harm of reputation, humiliation, and severe inconvenience all in the past, present, and future.

WHEREFORE, Plaintiff, Ms. Hafiz, hereby requests that this Honorable Court enter judgment in her favor and against the Defendants, including back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorney's fees, in addition to such other relief as deemed just and proper.

**COUNT III**
**HOSTILE WORK ENVIORNMENT IN**
**VIOLATION OF THE ADA AND THE PHRA**
*Plaintiff v. Defendants Merakey and Mr. Zurat*

106.    Ms. Hafiz incorporates the allegations set forth in the paragraphs, above, as if fully set forth at length herein.

107.    To prove a hostile work environment claim under the ADA, an employee must show, inter alia, that her workplace was permeated with discriminatory intimidation, ridicule, and insult, sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. Americans with Disabilities Act of 1990 § 102; *Hair v. Fayette County of Pennsylvania*, 265 F. Supp. 3d 544 (W.D. Pa. 2017).

108.    The United States Supreme Court "has held that when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII . . . is violated." *Washington v. Martinez*, 2004 U.S. Dist. LEXIS 4325 at *16 - *17 (E.D. Pa. 2004).

17

109.     Courts have held that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all of the circumstances.  These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Washington at *17 - *18 (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 22 (1993)).

110.     Ms. Hafiz was subjected to severe abuse and harassment by Ms. Branche.

111.     Ms. Hafiz made regular complaints to Merakey Human Resources.

112.     By Merakey's own admission, Merakey failed to take any corrective action regarding her reports within a reasonable amount of time.

113.     Merakey was aware of Ms. Hafiz's disability and still failed to take corrective action regarding Ms. Hafiz's report.

114.     Ms. Hafiz was unable to focus at work and her relationship with management and Human Resources was strained and antagonistic, such that Ms. Hafiz did not feel welcome in the workplace.

115.     Upon information and belief, Ms. Branche's harassment and abusive and threatening behavior became more severe and pervasive towards Ms. Hafiz after her reports.

116.     Defendant's indifference, deceitful actions, and failure to adequately accommodate Ms. Hafiz created a sufficiently hostile, antagonistic, and emotionally distressing environment.

117.     As a direct and proximate result of the aforementioned conduct, Ms. Hafiz suffered actual damages, including, but not limited to, lost wages, emotional distress all in the past present and future.

118.     The actions of Defendant were intentional, wanton, and willful, such that punitive damages are warranted.

WHEREFORE, Plaintiff, Ms. Hafiz, hereby requests that this Honorable Court enter judgment in her favor and against the Defendants, including back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorney's fees, in addition to such other relief as deemed just and proper.

**COUNT IV**
**RETALIATION AND WRONGFUL TERMINATION IN VIOLATION OF**
**THE ADA AND THE PHRA**
***Plaintiff v. Defendants Merakey and Mr. Zurat***

119.     Ms. Hafiz incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

120.     The ADA prohibits employers from retaliating against employees. 42 U.S.C. § 12203(a). To establish a claim for retaliation, Plaintiff must prove: (1) a protected employee activity; (2) an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004); *Lackey v. Heart of Lancaster Regl. Med. Ctr.*, 704 Fed. Appx. 41, 49–50 (3d Cir. 2017).

121.     Ms. Hafiz engaged in a protected employee activity when she made complaints to Merakey regarding the abuse and harassment by Ms. Branche and the effects Ms. Branche's conduct had on Ms. Hafiz's disability.

122.     Further, Ms. Hafiz engaged in protected activity when she stated to Mr. Zurat that she was searching for a new job due to Merakey's failure to take any corrective action.

123.    Shortly thereafter, Ms. Hafiz suffered adverse employment actions by Merakey when it subjected her to a sham mediation with Ms. Branche and suspended and terminated Ms. Hafiz following an unfounded investigation.

124.    Merakey's adverse action occurred within close temporal proximity with Ms. Hafiz's protected activity.

125.    Merakey's actions were retaliatory and bear a causal connection with Ms. Hafiz's protected activity and requests for reasonable accommodation(s).

126.    As a direct and proximate cause of the aforementioned conduct, Ms. Hafiz suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

127.    The actions of Defendants were intentional, wanton, and willful, such that punitive damages are warranted.

WHEREFORE, Plaintiff, Ms. Hafiz, hereby requests that this Honorable Court enter judgment in her favor and against the Defendants, including back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorney's fees, in addition to such other relief as deemed just and proper.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC**

Date: August 8, 2023                By: _____

Joshua P. Ward (Pa. I.D. No. 320347)

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

*Counsel for Plaintiff*